The first case of the morning called 2-12-1251, Henry Chamberlain v. the Civil Service Commission of the Village of Gurnee, and Fred Freidel, the third fire chief of the Village of Gurnee et al. On behalf of the claimants, Mr. Thomas F. McGuire et al., on behalf of Fred Freidel et al., Mr. Thomas Grass, and on behalf of the Village of Gurnee, Mr. Mark A. Wilkinson. Thank you. Mr. McGuire, you may proceed. Thank you. May it please the Court, Counsel. I took the liberty of standing up when the Court came in because a couple of weeks ago I broke a few vertebrae in my back, and as a result of that I find that if I sit down it gets a little awkward getting up, so I figured I'd start off by standing up. I recognize that we have a very limited period of time, so I'd like to present the following points for the consideration of the Court. I am in no way abandoning that which is stated in my briefs to this Court. This appears to me to be a case of first impression because it deals with the Fire Department Promotion Act, a fairly recent enactment of the General Assembly. My research has found virtually no cases dealing with the type of factual situation that is before you today, so I look upon this opportunity for this Court to give guidance to the entire State as to what is the meaning of the Fire Department Promotions Act, what is the meaning of the Collective Bargaining Agreement, which basically mirrors the Fire Department Promotions Act. This is a case that basically comes down to the point of hearsay. That is the fundamental issue in this case. Did the Commissioner, by allowing hearsay in to his proceedings, for all the reasons stated in our brief, I believe it did. There was no opportunity to cross-examine any of the people who gave statements. We don't know the circumstances under which they gave the statements, things of that nature. It's all spelled out in the brief. Ms. McGuire, if there's not a protectable property interest here, then the hearsay issue really is not an issue. It is, Your Honor. It is. But my question is, if there's not, the hearsay is really not an issue, correct? Incorrect. The property interest is his name on that eligibility list. That's not the question, though. The question is, if there is not a protectable interest, does hearsay matter? I believe so. Due process, because we're dealing with a person who's been on the job for 19 years, no prior disciplinary actions. The fire chief determined to give him a one-day suspension for four incidents. The commission used only two of those incidents to make a determination that his name should be passed over the list and the next person appointed. So is there a property interest? Yes. I say there's a property interest in the sense that if there wasn't a property interest, why? Well, let me phrase it this way. Why conduct an examination? Why go through all that rigmarole of studying, oral examinations, written examinations? Why go through all that rigmarole to wind up on a promotional list and then to say you don't have a property? Right. I think it's foolhardy. But I'm saying at the very least there was procedural due process violations in the sense of the use of the hearsay. Procedural due process, though, can be a flexible concept, right? If some situations may merit more due process than others, wouldn't you agree? Agree, but not in this case, not when you have the Supreme Court of Illinois Novicki case and the other cases I cited, which basically stand for the proposition that hearsay is a fundamental rule of evidence. And I maintain that when you have a man on the job for 19 years, no prior discipline, and the chief sends him for an employee assistance program after he suspends him for one day for four incidents, and there's nothing in the record indicating he didn't go to the EAP and successfully complete it, that man has a right to not have his name passed over on the promotional list in violation of the rule against hearsay. Did your client have notice of this hearing, correct? Of course. And your client had the opportunity to respond, at least in writing or by deposition, to the allegations, correct? He did. And he was heard at the hearing, I mean, either through counsel or, I mean, these things were  He had the opportunity to be heard in written form by way of this speaker. He had no right to personally appear. He wasn't there? He wasn't there. And he wasn't allowed to be there? Was not allowed to be there. Was counsel allowed to be there on his behalf? I was there on his behalf. And the rules, the rules that were explained to you was he had no right to be at the hearing? Or he chose not to be? No, no. He had no right to be at the hearing. Was that pursuant to some rule? There was no rule on it. This gets back to that Board of Fire and Police Commission analogy I gave. That Board of Fire and Police Commission Act has been around for a great number of years, and yet when it was first written, it took approximately 40 or 50 years to get together court decisions explaining what that statute meant. And that's why I say this is a case of first impression. Because there's no other rappelling or Supreme Court case dealing with this, getting back to the point that Justice just raised. Was he allowed to be there? The answer is no. Did I want him there? The answer is yes. Was he there? The answer is no. Who was there? I was doing the best I could by way of the written documents. The letter that was sent to him setting up the hearing said there would be no evidentiary hearing, correct? That is correct. Did that letter also say he was not allowed to attend? I cannot answer that question. I have to look at the letter. It's in the record. The letter said there would be no evidentiary hearing pursuant to the rules of the commission, correct? That is correct. Have we ever seen those rules? No, I haven't, sir. You don't have a copy of it? No, sir. Now, you had requested in that same letter, I believe, a special hearing, correct? Yes. Which you received, right? Yes. Now, was that provided for in the rules? No. So, in essence, then, you received more than what the rules required, your claim? Yes. But those were not adequate rules to protect the interests of my client having been on the job for some 19 years and having gone through the rigmarole of taking a promotional test. So, the rules provided for him to submit some sort of response to the allegations, is that right? If he wanted to, yes. And that's what I did by way of my writings to the commission. Okay. And then, in addition to that, then, you had this special hearing where you argued your client's case. Is that correct? Quite frankly, I don't – I wish I could remember that, but I'll have to defer to opposing counsel as to whether or not – I know I requested, but I believe it was strictly a matter of the paper trail, if you will, the writings submitted to the commission. There was no testimony. And it is your position that your client was precluded from testifying? Yes. He was not allowed there. And just so I'm clear, when you say you were allowed to present a written response, was that your written response or your client's written response? Mine. So, no further input from your client, neither written nor oral? That's correct. There was, in all straightforwardness, there was introduced as part of the complaint against my client before the commission to determine whether or not he should have passed over. There was the transcript of his formal interrogation as conducted by the fire department. He was physically present at that formal interrogation. He answered the questions of the village. And he was represented by an attorney and union counsel. That was the transcript. That was presented by the board or presented by the fire department? The fire chief, yes. And then my client was given the opportunity to present his side. When you say present his side, that's what I'm trying to get at. Either he did or he did not have the opportunity to present his side. He had the opportunity, if you will, to be very loyally about it, to present his side by way of this speaker, by way of this speaker's writings to the commission. He did not have the right to appear, nor did he appear. He had the right, if you go further, you could stretch it to they introduced the transcript of his formal interrogation. And then it was up to me to scrutinize that formal interrogation transcript and to formulate the writing, which in my opinion did not constitute a substantial shortcoming, which would justify him being passed over for a lieutenant. And also there wasn't an indication of a lack of ability to perform his future duties as a lieutenant. Was the plaintiff allowed to present any evidence of his own? Let's say there was another firefighter present at the scene of this incident, a nurse, who may have seen it differently than one firefighter who presented a statement. Was your client allowed to present written statements of other individuals that were present at the scene of these incidents? No. And that was explicitly explained in the letter, explicitly explained to him or you? Well, I chose, if you say now, why didn't you bring in statements of other parties? The problem with that, of course, is it's hearsay again. It's not under oath. It's not subject to course examination. And I put my eggs in the basket of hearsay. But the question is, did you have the opportunity to do that, yes or no? I mean, I appreciate your choice and weighing things out, but did you have the opportunity to present, say, a written statement from another firefighter or any other witness? No. Okay. I'm assuming that firefighters write reports much as police officers write reports and so forth. And for some of these incidences, there would have been other firefighters' reports, which you just alluded to, or their own summaries of what took place. And you're saying that you would not have been able to introduce those? The rules did not provide for that? That is correct, sir. Okay. Which I felt was an inadequacy of the Civil Service Commission in addressing this issue. Certainly, if it was a disciplinary hearing in the strict sense of the term, Section 18 of the Civil Service Act, I would have had that. But this was not a disciplinary matter. This was a matter dealing with whether or not he lacked – there was a substantial shortcoming which allowed the commission to bypass him to be promoted to the rank of lieutenant. And then there was one other name on the list, and he was passed over. My client's name was not removed from the list. But the list expired shortly thereafter, which in effect constituted he's dead in the sense of that promotional test list. A little off the subject, but you said your client caught a day for this. Did he have a full evidentiary hearing on that suspension? He did not, sir. Again, because the rules didn't provide for it? The – And again, I know that's not really what we're getting here. No, no. The more as I understand it, Mr. Justice, is that in a suspension of less than one week – gee, I'm going back. You just bear with me. I'm going into the computer bank. I don't want you to spend a lot of time on this because it's really not on the point of what we're talking about here. But you had mentioned that if it was a disciplinary hearing, he would have had further due process rights. Yes. Yes, but the law is in Illinois, an Illinois Supreme Court case, and this just skips my mind right now. If you're suspended for less than one week, you have no right to a disciplinary hearing. Evidentiary hearing? Yes, sir. The name of the case is – thank you – Wagner v. Kramer. The computer just clicked on. Wagner v. Kramer, K-R-A-M-E-R, dealing with the sheriff of Kane County, Illinois Supreme. That's all I have, Justices, unless the Court has any further questions. Pardon me. You said – you compared this a minute ago to a disciplinary hearing, where under certain circumstances then there is a right to a disciplinary – excuse me, an evidentiary hearing. Do you think that there is a hierarchy of property rights or that all should be created equal and treated equally? Well, I won't be so liberal as to reach for the moon. I will be conservative and say when we're dealing with a promotion, and it has great ramifications. A promotion has great ramifications not only to professional pride, but also to pension benefits and your salary. And in that kind of a situation, I submit that the Civil Service Commission should have conducted themselves as the Commission was required to conduct themselves if this was strictly a disciplinary hearing. Thank you, Counsel. You will have time for rebuttal on your end. Thank you. Was Mr. Wilkinson going to start? Yes. You may proceed. Thank you. Good morning. May it please the Court. Mark Wilkinson on behalf of the Civil Service Commission and its individual commissioners. I'm going to focus on where the Court wanted us to go with the order here and whether Mr. Chamberlain had a property right. And I want to point out for the Court, Mr. Chamberlain's reply brief to our brief on page 18 in the first bullet there, he mentions that his client has not claimed that he had a property right in the promotion. So I guess leaving what I consider perhaps an admission that he didn't have a property right, Mr. Chamberlain hasn't cited any cases in his brief that suggest that simply having your name on a list, whether you're going to be promoted or whether you're applying for a job, that entitles him to an automatic promotion or automatically receiving a job, so no vested right to the job. And that gets to the idea of whether or not he had a property right in the job, a property right in the promotion. And we've cited, with the commission and what I'm calling the fire department defendants between us, we've cited 12 cases in our briefs that all stand for the notion that simply having your name on a list doesn't create a property right. Those cases are all a little different from this case, though, aren't they, in that there's some discretion involved there where you have to pick one out of three or one out of five or something like that? Right. There is that discretionary element. Here we don't have that. Well, I would disagree with that. In the Fire Department Promotion Act says the commission, as the appointing authority, has the discretion to pass over a name on a list if it finds that the... Well, can't you read it really the other way? It says they shall appoint unless. So perhaps a difference in where you put the emphasis. But that seems the more reasonable reading of the statute to put the first phrase first. Well, I suppose you could read it that way. But we read it the way that the commission has the discretion to pass over as long as it satisfies the conditions in the statute, that being that they've concluded that the firefighter engaged in substantial misconduct or that he's demonstrated substantial shortcomings in his work. So one of those two conditions, and then documenting the reasons why it felt that way. Who has to prove that? It's not, we don't believe it's something that needs to be proved. It's just something that the commission has to demonstrate that it had that feeling. Because when you think about the way the statute works... Well, the commission sits as a fact-finding body in this instance, and it's the chief who's basically saying, we think there's a problem here, correct? Right. So the commission is like the court, and the chief is like the prosecutor, to draw an analogy. So, I mean, the chief has to show something. Otherwise, the person absolutely gets the job. Correct? I wouldn't necessarily say show. Okay, so if the chief just sits mute, who gets the job? In that situation, I would suggest that you're right, that he would get the job. If there's nothing before the commission that in any way suggests that he engaged in those two conditions, the shortcomings. The commission doesn't go seek these things on its own, does it? They don't. I mean, the chief has to bring it to them. Correct. And again, I'm not talking about there's this, you know, burden of beyond a reasonable doubt or anything like that. But, I mean, someone has to come forward and say, hey, there's a problem here. Correct. And that's the chief. Correct. Okay, so you have someone who's absolutely going to get the job, unless someone comes forward and says, hey, there's a problem. And then the board has to fight, we agree there is a problem. Right. So, I mean, again, you talk about the case law that establishes a protectable property interest in a promotion where there's perhaps a statutory basis or a contractual basis. And wouldn't we have both here? If you read it the way I just kind of put it to you, that is that, you know, the Promotion Act and also the CBA, which mirrors that, wouldn't that create a protectable property interest unless the chief comes forward and says there's a problem? In that situation, I would agree with you. If there's no evidence before the commission, if there's nothing in front of the commission, then I would agree with you that the commission has to appoint the next name. But let's think about an example where these lists exist for two or three years. So let's think about a situation where there's misconduct in a firefighter's file, two years old. I wouldn't think that the fire department would have to bring in witnesses from two or three years ago to try and prove something that was never disputed at the time, just to establish whether these conditions exist to pass somebody over. Well, wait a minute. If that event took place prior to the list being compiled, it's not relevant, is it? Well, the lists exist for, are on file for two years. So something that took place prior to the, I think it was May of 2010, wouldn't that be relevant, would it? Correct. That wouldn't be relevant. But if it took place while the list was existing. Pardon? While the list existed. While the list existed, right. That's the only thing that would be relevant. Correct. And the point I was trying to make is that it would be really unwieldy for the commission or the fire department to bring in witnesses from two years ago or a year ago to prove misconduct that was never disputed at the time. Does that ever actually happen? When there's no dispute, no other side of the story? I'm sure it happens in the sense that. It didn't happen here, though. It didn't happen here. And since we have a relatively new statute, I can't point to any examples of where that's happened. But in my experience, yes, there have been situations where folks have been disciplined on the job and don't dispute it. What did the rules, the Civil Service Commission rules provide for here by way of a hearing? The record's silent on that point. But what we did is Mr. Drafts, on behalf of the fire department, submitted the information to the commission that we've seen that established Mr. Chamberlain's misconduct and substantial shortcomings in his work. From there, the commission invited both Mr. Chamberlain and the fire department to submit information to the commission to consider whether it's going to pass over Mr. Chamberlain. So that, I think, gets at the idea of notice of the commission's contemplated action that we're going to pass him over and then the opportunity to respond. And an opportunity to be heard? An opportunity to be heard, sure. He submitted information, and that's in the record at C-186-29. Now, did he have the right to submit hearsay statements of witnesses, much as the chief submitted hearsay statements that were used against him? Sure. The commission's counsel invited both parties to send in whatever they wanted to send in. And as we've talked about in our briefs, due process here is a flexible concept. We're talking about a promotion. We're not talking about somebody who's been let go or discharged. So my question to Mr. McGuire, then, was if there were other firefighters who had created their own memos about a certain event that might have been a little bit different than what the report was that the chief submitted, the plaintiff could have submitted those? Yes. Could the plaintiff have testified? Pardon? Could the plaintiff have testified? He could not. We didn't have an evidentiary hearing. The commission didn't have it. I would like this if he just makes a statement and we don't call it an evidentiary hearing. Sure. He could have submitted a brief testimony. He could not testify on his own behalf. He couldn't come in and orally present his side of the case. Is that correct? That's correct. We didn't have an evidentiary hearing, so there's no opportunity for him to do that. And it's confusing in some ways in the sense that there's two parallel proceedings going on here, or were going on. There was the proceeding under the Fireman's Disciplinary Act. And that's where we have Mr. Chamberlain's administrative statement. And then we have the proceeding under the Fire Department Promotion Act. And that's where we invited Mr. Chamberlain and Mr. Drass to submit, or the Fire Department, I should say, to submit information to the commission so it could make its decision. And from there, he could have submitted an affidavit. He could have submitted a declaration. He could have submitted declarations or affidavits from other firefighters or other folks. And how would he know that he could do that? From the commission's letter. The counsel for the commission wrote to Mr. Chamberlain, Mr. McGuire, I should say, counsel for Mr. Chamberlain, and invited them to submit any materials they wanted to. Now, the hearing that was held, how do we know whether that was more or less than what the civil service rules require? Well, my understanding is the rule on this, the civil service commission rule on this, tracks the Fire Department Promotion Act and the collective bargaining agreement in the sense that the commission needs to have a reason to pass over, or a reason to conclude, I should say, that I'm not going to rehash the statute. But substantial shortcomings were engaged in this conduct. And the statute itself doesn't provide for any sort of evidentiary hearing, correct? It does not. If you look through the statute, look for the word hearing, it's not in there. Why did the letter say, pursuant to our rules and the statute, we're not giving you an evidentiary hearing? What does that mean? It meant that the rules, the commission's rules, were silent on this issue. They didn't address whether Mr. Chamberlain had a right. It's kind of an odd letter then. Pursuant to the fact that there are no rules, our rules are, you're not getting a hearing. Well, unfortunately, the administrative record's silent on what the commission's rules. I think they were talking about Rule 6 in the letter. Well, we don't have that in front of us. We don't have that in front of us. Okay. Anything else? No. Okay. Thank you, Counsel. Mr. Dratz, you may proceed. Good morning, Justices. May I please report, Thomas Dratz. I represent Fire Chief Fred Friedel, Deputy Chief John Kavanaugh. John Gramer was actually the person who was appointed, and actually myself. Mr. McGuire sought to make me a defendant, thinking I was part of the administrative process that led to this controversy. I only took a short time because I think, although I started this, my role was to investigate the allegations that related to the job he had. And those instances included, and I think were significant to the Chief, statements by fellow firefighters, paramedics, also the, as you've noted, Justices, the statement of the nurse. These were substantial issues. And the Chief and the Deputy Chief, they're faced with the fact that this person is on tap to become a leader of men and women of the Fire Department. And they have to deal with everyday administration, and they felt that these were a problem. And so there have been some mention of, well, there was only a one-day suspension. That was the job that he had. The issue before Your Honors is the job that he was anticipating having. Can I ask you a question about that? Sure. Is this sort of a threshold issue that you decide up front, that even if this is all true, the maximum suspension would be less than a week, therefore no evidentiary hearing? Or how does that work? It's not a matter of an evidentiary hearing. In the administrative realm, Madam Justice, the statement is pursuant to the Firefighters' Bill of Rights. And the record contains the administrative rights notice, the notice of charges, the right to counsel. We certainly had an administrative statement where he was represented by counsel from the Firefighters' Union. And the Chief has a broad range of disciplinary actions at his or her disposal. In this case, Chief Friedel felt that the one-day suspension and the referral to the EAP because there were some personal issues that ‑‑ Okay. So the issue is, though, regardless, he could have been suspended for one day or for a year. The hearing is the same. Is that correct? Not for a year. Well, okay. There's a threshold of five days where the Chief can do so much. Right. That's what I just asked you. And the collective bargaining agreement gives the right to either go to the commission for grievance or go to grievance arbitration. This was below that threshold. Okay. And you, Justice Jorgensen, earlier you asked, are there instances where in employment law, public employment, there ever is a case where there was no challenge? And I briefly would touch on that. In labor law, there is a principle that if you are disciplined and you do not grieve it, it's deemed admitted. Now, that, of course, presumes a right to grieve. And I don't think that right was here. But he did have the opportunity to be heard. He had the opportunity to receive notice. He had the opportunity to be represented by counsel during that part of this controversy in which I was involved. I then put it in the hands of the Civil Service Commission. And they are, although many union counsels don't believe it, they are independent. They have their own lawyers. They make their own judgments. And I said, here's what I have. And we did have the administrative statement of Firefighter Chamberlain. And while there has been a ton of talk of hearsay, his is not. And his, at best, was evasive in parts. He did not recall significant events you would think he would recall. And I think on a basic credibility test, he failed because he did not recall things that he normally would recall. So you didn't write the letter then? The Commission's counsel wrote the letter to setting the hearing and setting the parameters of the hearing and all that? Yes, Mr. Justice. What I did was an administrative investigation related to the job that he had, compiled that record, which did include the statements of fellow firefighters and independent witnesses, including a nurse. And those were compelling to be putting someone in charge of other persons. But it wasn't our call. It's a unique kind of bifurcated process. We don't really hire and we don't really fire as a department. The Commission in our village has that authority. So that's why the collective bargaining agreement tracks the statute, as you've heard three or four times. And so from a property rights standpoint, which is what you all asked us to address, there is that kicker there. And I know how you read it, and it's shallow point. And I think the Commission generally does. But for, and these were such that the chief put it in the hands of the Commission and said, I see a problem. And they did their thing. But no arguments are really raised against my defendants. The property right, which you all asked us to address, is, I think, Mr. Wilkinson said page 18. I think it's page 13, where Mr. Chamberlain's counsel says we don't raise that. And I think you heard the rest of the argument from Mr. McGuire was we don't think this was enough. We don't think it was bad enough. This wasn't bad enough behavior. And that's, I think, a discretion where even this court is not under administrative review supposed to substitute judgment. I think his point was if you take the hearsay out, there was scant evidence. Well, I think the evidence comes out of, unfortunately, the mouth of his client. I appreciate your argument that there were some omissions. But I think his point, well, I don't want to put words in his mouth, but the point was if you take all the other hearsay away, there wasn't a lot of meat there. I understand your point, Ma'am Justice. The world in which I was living, in the administrative world, he's not sworn. He's told he has an obligation under the Fire Department rules to be truthful. Those persons who gave statements, there were firefighters present that gave us statements. None of them were under oath. Wait, wait, wait. Fire? Present? Present in some of the incidents. Not at the civil service area. Not at the hearing. No, separate. At the event. Okay. On the street when these things happened or in the emergency room. Other firefighters were present, gave us statements. And they're under an obligation when they make official fire department reports to be truthful. I can't say the same for a nurse. But she gained nothing. There was no promotion in store for her if she ratted out a fire person from the building. So we believe there is, as I handed it off, so to speak, the commission made its findings and did afford, I think, some additional due process. And I think the difference here is there is a level of due process for the job you have. And there is a different level, I think, a lighter level for the job you think you might have. Thank you, counsel. Thank you. Mr. McGuire, rebuttal argument. Sir, we want to thank you for coming out today in the snow for this argument. You could have probably asked for a continuous based on a vertebrae in your back. I think we might have even granted that. I'm not sure. But we appreciate you being here. Can you, you know, counsel's raised, actually I see it on page 18 in one of the reply briefs at least. You know, Chamberlain has not claimed he had a property right to be promoted. I don't dispute that. But our position is he had a property right not to be removed from that promotional list. Passed, I should say. Passed over on that promotional list for arbitrary reasons or arbitrary conduct on the part of the commission. So his position on the list was a property right. You've never waived that argument. That is correct, sir. Okay. Just the actual promotion itself. You're splitting the difference a little bit there. And I believe legitimately so. Otherwise I wouldn't have said what I did. Sure. The recognizing I have a very limited period of time. If I may just go back to my initial brief, because the justice has asked some questions about the civil commission, civil service commission rules on this type of proceeding. And my recollection is they didn't have rules dealing with this type of proceedings. And the best indication of that would be what's found on the record on pages 158 to 191, 158 to 191. That's a series of letters that I wrote and the other attorneys involved responded to and so on down the line. Including the attorney for the commission. The question was asked about why didn't I bring in, why didn't I bring in statements from other parties? In other words, other firefighters to contradict or to explain. And if I had introduced that, that's hearsay. And that's knocking the legs out from underneath my mean argument of hearsay. It's not admissible. And even if I brought it in as an affidavit, they weren't allowed to come in and testify for examination. And having practiced law for a series of years, I'm aware that just because somebody fills out an affidavit, or somebody testifies on the rolls doesn't necessarily mean it's absolutely true. You have to ask questions of that person. You have to probe in depth. That didn't happen. Mr. McGuire, if the statute doesn't give your client the right to an evidentiary hearing, where does the right to cross-examination come from? Due process of the law. What processes do. And our position is because he went through all the testing procedures and his name is on that list, you cannot arbitrarily just do a quick brush stroke and get him off the list. It's a matter of due process of the law found in the Illinois Constitution and the Constitution of the United States, which the court is well aware of. I go back to the point of that Borderline Police Commission Act. Counselor, can I ask you a question just on that follow-up? Your position is because he was the number one position on that list, that's his property interest. And the way the statute is written, he shall be promoted unless. He was not number one on the list, but his name was the next on the list. Right. And there was one after. Right. And, yes, because his name was there, they cannot arbitrarily just yank him or bypass him. Without due process. And that would include cross-examination. So would it be your position that your client would be the only person that would have that level of due process? In other words, it's the position on the list that creates, in your words, his right to a cross-examination, his right to something other than hearsay presented against him. Correct. So the fourth and fifth guy on the list, not so much. Well, if that fourth or fifth person, presuming that my client was legitimately passed over. Well, because then they become the next person. Yeah. But only at the time, because they are that next person on the list, that's what creates, from your position, the right to cross-examine. Is that correct? I don't understand your question, I'm sorry, Justice. There's a number of people on the list, and your position is only the next guy has this property interest. No, everybody on that list had a property interest by the fact that their name was on the list. Okay. And are you saying, then, that due process always equates with the right to cross-examine? Yes. Okay. There are a number of situations where the right to cross-examine that we've all dealt with up here is not afforded. For instance, one case I can think of is a landfill was going in, and they didn't allow every person that wanted to come. All the surrounding neighbors had a property interest, a protectable property interest in a period. But the commission is granted, I'm sorry, the county board committee is granted some leeway in deciding how they want to handle cross-examination. And cross-examination is not mandated by procedural due process in that situation. Why is this one different? Because in this case, there were handwritten statements by parties not under oath submitted as the justification for bypassing my client. And I, at the very least, as the attorney for Chamberlain, had, as I understood it, the right to cross-examine these witnesses and to have them appear and not just rely upon hearsay statements, which could be fabricated very easily. And then the bottom line is your position is your client could not testify, you could not present other live testimony, nor could you present other hearsay statements. Is that correct? I'll speculate. I'll say that because they introduced, the fire chief introduced hearsay statements, fairness would have, I think, necessitated that I, too, would have the right to introduce hearsay statements. But once again, the hearsay statements don't cross-examination. I made the decision, if these, if you're just going to let in notes or letters of people, not even on the oath, and none of these people are subject to cross-examination, why would I be joining you in that mess? Thank you, Mr. McGuire. I thank the court. We would like to thank all the attorneys for their arguments today. The case will be taken under advisement. A decision will be rendered in due course, and we urge you, thank you. Hope you feel another suit. Thank you.